# No. 25-3068

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

KEVIN FLOWERS

*Plaintiff-Appellant*

– v. –

CAREMARK PCS HEALTH, LLC, et al.

*Defendants-Appellees*

Appeal from the United States District Court for
the Western District of Arkansas
U.S. District Judge Susan O. Hickey

# REPLY BRIEF OF APPELLANT

Gary D. Marts, Jr.
Rodney P. Moore
Jessica Pruitt Koehler
WRIGHT, LINDSEY &
JENNINGS LLP
200 West Capitol Ave., Ste. 2300
Little Rock, AR 72201-3699
501-371-0808
gmarts@wlj.com
rpmoore@wlj.com
jkoehler@wlj.com

Scott Poynter
Clay Ellis
POYNTER LAW GROUP, PLLC
4924 Kavanaugh Blvd.
Little Rock, AR 72207
501-812-3943
scott@poynterlawgroup.com
clay@poynterlawgroup.com

*Attorneys for Appellant Kevin Flowers*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

ARGUMENT ......................................................................... 1

    I.    Neither the Network Adequacy Statute nor the Mail Order Statute is preempted by ERISA ...................................... 1

    II.   Caremark's alternative grounds for affirmance have no merit.................................................................... 10

        II.A  Arkansas law does not prohibit unjust-enrichment claims premised on statutory violations.......................................................... 11

        II.B  Flowers stated a claim for unjust enrichment under Arkansas law, which does not require direct conferral of a benefit on the defendant................... 13

CONCLUSION ..................................................................... 17

CERTIFICATE OF COMPLIANCE....................................................... 19

CERTIFICATE OF SERVICE............................................................. 20

i

Appellate Case: 25-3068    Page: 2    Date Filed: 02/06/2026 Entry ID: 5605542

# TABLE OF AUTHORITIES

**Cases**

*Baptist Health v. Murphy*, 226 S.W.3d 800 (Ark. 2006) ..................................................................12

*Bresnahan v. City of St. Peters*, 58 F.4th 381 (8th Cir. 2023) ..................................................................17

*City of Alexander v. Doss*, 284 S.W.3d 74 (Ark. App. 2008)..................................................................12

*Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999) ..................................................................13

*Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997)......................................17

*Frigillana v. Frigillana*, 584 S.W.2d 30 (Ark. 1979) ..................................................................14

*Hood v. United States*, 342 F.3d 861 (8th Cir. 2003) ....................................................................6

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ..................................................................5, 8

*Patton v. Brown-Moore Lumber Co.*, 292 S.W. 383 (Ark. 1927)..................................................................14

*Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183 (10th Cir. 2023)........................................ 1, 5, 6, 8, 9

*Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956 (8th Cir. 2021) ........................................ 1, 3, 4, 5, 6, 7, 8, 9

*Phillips v. Denton*, 543 S.W.3d 508 (Ark. App. 2018) ..................................................................11, 14

ii

Appellate Case: 25-3068     Page: 3     Date Filed: 02/06/2026 Entry ID: 5605542

*Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80 (2020) ................................................................ 1, 2, 5, 6

*Smith v. Whitener*, 856 S.W.2d 328 (Ark. App. 1993) ...................................................................... 14

*Thompson v. Bayer Corp.*, No. 4:07-CV-00017, 2009 WL 3629825 (E.D. Ark. Feb. 12, 2009) ................................. 15

**Statutes and Rules**

Ark. Code Ann. § 17-92-119 ........................................................ 1

Ark. Code Ann. § 23-92-505 ........................................................ 1

**Other Authorities**

Arkansas Model Jury Instruction 2445 ................................................ 15

Howard W. Brill, et al., *Arkansas Law Of Damages* (Westlaw Nov. 2025 update) ................................... 11, 15

Appellate Case: 25-3068    Page: 4    Date Filed: 02/06/2026 Entry ID: 5605542

## ARGUMENT

Caremark's brief fails to rebut Flowers's argument that neither the Network Adequacy Statute (Ark. Code Ann. § 23-92-505) nor the Mail Order Statute (Ark. Code Ann. § 17-92-119) is preempted by ERISA. Like the district court, Caremark relies heavily on a Tenth Circuit case, *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183 (10th Cir. 2023), that is contrary to and even rejects this Court's decision in *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956 (8th Cir. 2021). Under *Wehbi*, Caremark fails to show that either statute changes anything about benefits, beneficiaries, or schemes of substantive coverage as required to trigger preemption. Nor do Caremark's alternative bases for affirmance have any merit. This Court should therefore reverse the district court's dismissal of Flowers's action.

## I. Neither the Network Adequacy Statute nor the Mail Order Statute is preempted by ERISA.

Little of Caremark's brief responds directly to Flowers's arguments in his opening brief, which focused on whether the Network Adequacy Statute and the Mail Order statute are preempted under *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80 (2020), and *Wehbi*, which are the controlling authorities in this case. When Caremark does

1

respond to Flowers, much of that argument quibbles over Flowers's description of the "connection with" preemption standard. *See* Caremark Br. at 27–30. That description focused on the issue with which, according to *Rutledge*, connection-with preemption is "primarily concerned": "laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits or by binding plan administrators to specific rules for determining beneficiary status." Flowers Op. Br. at 12–13 (quoting *Rutledge*).

Caremark insists that Flowers incorrectly focused on those primary considerations and that the analysis must focus on more general language from *Rutledge* describing the question of connection-with preemption as "whether a state law governs a central matter of plan administration or interferes with nationally uniform plan administration." Caremark Br. at 28 (quoting *Rutledge*). By that point in its brief, Caremark seems to have forgotten language from *Rutledge* that it earlier quoted deeming that language "a shorthand for the[] considerations" on which Flowers focused. *Id*. at 16 (quoting *Rutledge*). Surely "shorthand" for more particular considerations is not "the ultimate question" in the analysis as Caremark claims.

2

This Court's formulation of connection-with preemption in *Wehbi* focuses on the factors that Flowers emphasized:

> A state law has an impermissible "connection with" ERISA plans if and only if (1) it "governs ... a central matter of plan administration"; (2) it "interferes with nationally uniform plan administration"; or (3) "acute, albeit indirect, economic effects" of the law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." The mere fact that a state law "affects an ERISA plan or causes some disuniformity in plan administration" does not entail that the law meets this standard, "especially ... if a law merely affects costs." ***Instead, the connection-with standard is "primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits or by binding plan administrators to specific rules for determining beneficiary status."***

*Id.* at 968 (citations omitted and emphasis added). Thus, whether a state law requires the payment of specific benefits or requires specific rules for beneficiary status has primary importance in the connection-with preemption analysis. Flowers argued those considerations, but he also argued the "central plan administration" issue. *See* Flowers Op. Br. at 21–23 ("The Network Adequacy Statute does not interfere with central plan administration, either.").

Caremark wants the Court to ignore the primary considerations in favor of the more general "shorthand" language because Caremark

3

Appellate Case: 25-3068    Page: 7    Date Filed: 02/06/2026 Entry ID: 5605542

cannot fit the Network Adequacy Statute or the Mail Order Statute within those considerations.  As Flowers showed in his opening brief, neither the Network Adequacy Statute nor the Mail Order Statute requires payment of specific benefits, binds plan administrators to specific rules for determining beneficiary status, or indirectly forces an ERISA plan to adopt a certain scheme of substantive coverage.  Caremark cannot refute that argument, so it focuses on the "shorthand" and ignores the considerations that the Supreme Court and this Court have deemed primary.

Despite its focus on "central plan administration," Caremark offers little analysis of the issue, opting instead for broad assertions that the statutes at issue intrude on such matters.  Those broad assertions fail to address Flowers's argument that under *Wehbi*, statutes like the Network Adequacy Statute that govern pharmacy participation in networks "constitute, at most, regulation of a noncentral 'matter of plan administration' with *de minimis* economic effects."  Flowers Op. Br. at 21 (quoting *Wehbi*).  Nor does Caremark respond to Flowers's argument that statutes that merely affect "a plan's shopping decisions" do not intrude on matters of central plan

4

administration, either.  *Id.* at 22 (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)).

Caremark ignores those arguments because, like the district court, Caremark believes that the only authority needed to resolve this case is *Mulready*.  Surprised that Flowers does not elevate *Mulready* in the same way, Caremark claims that Flowers did not explain why *Mulready* is wrong and believes that supposed omission to be telling. Caremark Br. at 26.  Caremark's claim is misleading, though, because Flowers explained that the district court relied almost exclusively on *Mulready*, argued that the district court erred in relying on *Mulready*, and argued that the district court's *Mulready*-focused analysis failed to follow both *Rutledge* and *Wehbi*.  *See* Flowers Op. Br. at 7, 18, 19–23, 23–25.  But if more direct language is needed, Flowers will say it here: *Mulready* is wrong.

*Mulready* is wrong because it rejects *Wehbi*.  *Wehbi* held that state laws that affect pharmacy participation in pharmacy-benefit networks "constitute, at most, regulation of a noncentral 'matter of plan administration' with *de minimis* economic effects."  18 F.4th at 968 (citation omitted).  The laws at issue limited accreditation requirements

5

that PBMs could impose on pharmacies as a condition for participating in networks.  *Id.*  Those laws were not preempted because they did "not require payment of specific benefits or bind plan administrators to specific rules for determining beneficiary status."  *Id.*  In reaching that conclusion, the Court relied heavily on *Rutledge.  Id.*

*Mulready* dismissed the *Wehbi* discussion of preemption as "formulaic" and said that this Court failed to "explain why dictating network composition would not count as governing a central matter of plan administration.  78 F.4th at 1202.  *Mulready* also says that "*Wehbi* failed to assess that law's effects on the structure of the provider network and connected effect on plan design."  *Id.  Mulready* thus rejected what it called "*Wehbi*'s limited reasoning" as "unhelpful."[1]  *Id.* Of course, neither the district court nor this Court can jettison *Wehbi* so easily.  *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) ("The District Court, however, is bound, as are we, to apply the precedent of this Circuit.").  *Wehbi*, not *Mulready*, controls here.

---

[1] Given that *Mulready* considers and rejects *Wehbi*, Caremark's grave warning that the Court must avoid "an irreconcilable split with the Tenth Circuit" (Caremark Br. at 15) rings hollow.  Any split occurred when the Tenth Circuit dismissed *Wehbi* and took another course, which was not the fault of this Court.

6

Caremark tries but fails to distinguish *Wehbi* by focusing on the differences between the statutes it considered and the statutes at issue. But those differences do not require the Court to ignore the principle on which *Wehbi* relied. Under that principle, state laws that neither require payment of specific benefits nor bind plan administrators to specific rules for determining beneficiary status are not preempted just because they might have an incidental effect on network composition. Some of the laws at issue in *Wehbi* had that sort of effect because they increased the number of pharmacies eligible for plan participation. The district court's conclusion that the Network Adequacy Statute is preempted because it "indirectly compel[s] decisions about which pharmacies are included in Caremark's pharmacy networks" (App. 227; R. Doc. 88 at 7) thus reaches a conclusion at odds with *Wehbi*, which found such effects insufficient to invoke preemption.

If anything, the effect of the Network Adequacy Statute is even more modest than the effect at issue in *Wehbi*. While the North Dakota law in *Wehbi* prohibited a wide range of accreditation requirements that limited the number of pharmacies eligible for network participation, the Network Adequacy Statute merely requires that individuals covered by

7

a health benefit plan have access to a single community pharmacy, with no particular pharmacies mandated for inclusion. Access to a community pharmacy changes nothing about benefits provided or who receives those benefits. The result here should therefore be the same as in *Wehbi*, with the Court rejecting preemption of the Network Adequacy Statute because it mandates no particular benefit structure.

The Tenth Circuit's search in *Mulready* for any effect on "network composition" makes its preemption analysis far broader than this Court's from *Wehbi*. Under the Tenth Circuit test, any state law that might be said to affect network composition would be preempted. The North Dakota accreditation statute in *Wehbi* would be preempted. So would the New York act at issue in *Blue Cross*, which effectively forced plans to buy insurance from Blue Cross rather than other insureds. The Supreme Court's approach in *Blue Cross* was far narrower than the Tenth Circuit's approach, with the New York law escaping preemption because it did "not bind plan administrators to any particular choice." *Id*. at 659. The same is true of the Network Adequacy Statute, which sets basic requirements without binding plans to any particular choice of pharmacies in their networks.

8

*Wehbi* also applies to the Mail Order Statute. In addition to the accreditation requirements, the Court also rejected preemption in the context of a North Dakota statute that required PBMs to allow pharmacies to fill prescriptions by mail order. 18 F.4th at 968. The Court reached that conclusion because "the fact that a PBM must permit a pharmacy to fulfil mail orders or dispense all drugs allowed under its license does not mean that the PBM must *cover* mail orders or all drugs allowed under the pharmacy's license." *Id.* at 968. Nor did the statute bind plans to specific rules for determining beneficiary status. That reasoning applies to the Mail Order Statute, which merely forbids requirements that all prescriptions be filled by mail and, like the North Dakota statute, does not require coverage of any particular prescription or any particular person. Caremark has no response to this argument other than to point to *Mulready* and ignore *Wehbi*. Caremark Br. at 24–26. But *Wehbi* is the controlling precedent, and it establishes that ERISA does not preempt the Mail Order Statute.

Regardless of whether the Court focuses the inquiry on the "central matter of plan administration" language or the primary concerns for which that language is "shorthand," ERISA does not

9

Appellate Case: 25-3068      Page: 13      Date Filed: 02/06/2026 Entry ID: 5605542

preempt the Network Adequacy Statute or the Mail Order Statute neither statute binds plan administrators to any particular choice. The district court erred in ruling otherwise. This Court should correct that error by reversing the dismissal of Flowers's unjust-enrichment claim and remanding this matter for resolution on its merits.

## II.    Caremark's alternative grounds for affirmance have no merit.

As insurance against reversal of the district court's preemption-premised dismissal, Caremark asserts two alternative bases for affirmance that the district court did not address. First, Caremark claims that Arkansas law does not permit Flowers to premise an unjust-enrichment claim on the statutes at issue because they do not provide private rights of action. That argument fails because it is contrary to Arkansas's broad conception of unjust enrichment. Second, Caremark argues that Flowers failed to state a claim for unjust enrichment because he did not allege that he personally conferred a benefit on Caremark. That argument fails because Arkansas law does not require a direct benefit to state a claim for unjust enrichment. The Court should reject both arguments.

10

## II.A Arkansas law does not prohibit unjust-enrichment claims premised on statutory violations.

Caremark's first alternative ground asks the Court to create new Arkansas law by holding that unjust enrichment cannot be based on a statute that does not provide a private right of action. That argument fails to account for the breadth of the claim under Arkansas law, which views unjust enrichment as "protean, taking on whatever form is required to right a wrong and do justice."[2] *Phillips v. Denton*, 543 S.W.3d 508, 511 (Ark. App. 2018) (citation omitted). Thus, "unjust enrichment can be inferred" when "the conduct, circumstances, and relationship of the parties" show that the defendant "has received money (or its equivalent) under circumstances that, in equity and good conscience, he or she ought not to retain." *Id*. (citations omitted). As the leading treatise on Arkansas law remarks, the "crucial element may be unlawful conduct." Howard W. Brill, et al., *Arkansas Law Of Damages* § 31:2 (Westlaw Nov. 2025 update). Violating a statute, private right of action or not, is unlawful conduct.

---

[2] This conception of unjust enrichment puts to rest Caremark's concerns about this Court broadening Arkansas law by permitting Flowers's claim to proceed. Unjust enrichment under Arkansas law is already so broad as to defy further broadening.

11

Appellate Case: 25-3068     Page: 15     Date Filed: 02/06/2026 Entry ID: 5605542

Though the Arkansas courts have not reached this issue, they have sanctioned the use of statutes that do not provide a private right of action in analogous cases involving common-law claims. In particular, the Arkansas Supreme Court has permitted violations of "anti-kickback statutes" offering no private right of action to establish the impropriety element of a tortious interference claim. *Baptist Health v. Murphy*, 226 S.W.3d 800, 809 (Ark. 2006). Thus, "while these statutes create no private right of action, a violation may be considered evidence of impropriety." *Id.* at 809 n.5. The same principle should apply to unjust-enrichment claims, which similarly examine the defendant's conduct to determine whether it was unlawful under the circumstances.

Lacking Arkansas law to support its argument,[3] Caremark resorts to cases applying the unjust-enrichment laws of other states. But Caremark has not shown that the laws of other states on which it relies bear the "protean" aspect that characterizes Arkansas unjust-enrichment law. Indeed, courts have long recognized that state laws on

---

[3] The only Arkansas case that Caremark cites does not address this issue. *City of Alexander v. Doss*, 284 S.W.3d 74 (Ark. App. 2008), addressed a negligence claim dressed up as an unjust-enrichment claim to evade the defendant city's tort immunity. Those issues are not present here.

12

Appellate Case: 25-3068     Page: 16     Date Filed: 02/06/2026 Entry ID: 5605542

unjust enrichment vary widely, with little agreement even on elemental questions like what "unjust enrichment" means. *See Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (noting that "variances exist in state common laws of unjust enrichment" and that the "actual definition of 'unjust enrichment varies from state to state"). Those variances leave Caremark's cases with little value on the question of what Arkansas law requires, particularly when Arkansas courts have allowed the use of statutes with no private right of action to serve as the basis for other common-law claims.

Nothing in Arkansas law prohibits the use of the Network Adequacy Statute or the Mail Order Statute to provide the premise of an unjust-enrichment claim. This Court should therefore reject Caremark's alternative ground for affirmance.

**II.B Flowers stated a claim for unjust enrichment under Arkansas law, which does not require direct conferral of a benefit on the defendant.**

Caremark's second alternative ground for affirmance also has no merit. Caremark argues that Flowers failed to state a claim for unjust enrichment because "the Second Amended Complaint does not allege—even in conclusory fashion—that *Flowers* conferred any benefit on Caremark, as required to state a claim." Caremark Br. at 39. That

13

Appellate Case: 25-3068     Page: 17     Date Filed: 02/06/2026 Entry ID: 5605542

argument fails because it misunderstands Arkansas unjust-enrichment law, which requires only that Flowers allege that Caremark received something of value to which it is not entitled, not that the value came directly from Flowers.

As *Phillips* noted, unjust enrichment lies when the defendant "has received money (or its equivalent) under circumstances that, in equity and good conscience, he or she ought not to retain." 543 S.W.3d at 511. But that benefit need not come directly from the plaintiff—unjust enrichment can occur "irrespective of whether the money was received from the plaintiff or from a third person." *Frigillana v. Frigillana*, 584 S.W.2d 30, 35 (Ark. 1979) (quoting *Patton v. Brown-Moore Lumber Co.*, 292 S.W. 383 (Ark. 1927)). Accordingly, "the enrichment need not have come directly from [the plaintiff], but could come from a third source." *Smith v. Whitener*, 856 S.W.2d 328, 330 (Ark. App. 1993). Arkansas law thus establishes that Flowers did not have to allege "that *Flowers* conferred any benefit on Caremark" to state a claim; alleging that Caremark received some benefit to which it was not entitled suffices.

14

Caremark cites *Thompson v. Bayer Corp.*, No. 4:07-CV-00017, 2009 WL 3629825 (E.D. Ark. Feb. 12, 2009),[4] but that case does not support its position that Flowers had to allege that he provided a benefit directly to Caremark. *Thompson* involved an attempt to certify a class to pursue an unjust-enrichment claim based on the Bayer's advertising of a multivitamin. Caremark cites part of the opinion addressing whether differences among the states on the law of unjust enrichment precluded a nationwide class. *Id.* at *5. The district court pointed out that while some states would permit an unjust-enrichment claim only if the purchaser had conveyed the benefit—i.e., the purchase price—directly to Bayer, "plaintiffs from Arkansas would not be required to prove that Bayer obtained a 'direct benefit'" in the form of the purchase price from those plaintiffs. *Id.* at *6. In other words,

---

[4] Caremark also cites Arkansas Model Jury Instruction ("AMI") 2445, but, as its comments establish, that instruction applies to restitution implied in fact, not restitution implied by law, an area that AMI does not cover. *See* Brill, *supra*, § 31:2 ("Unlike a claim based on an implied in fact contract, no specific Arkansas Model Jury Instructions have been drafted for an unjust enrichment claim based on an implied in law contract."). The claim here is for restitution implied by law. *See id.* (for restitution implied by law, the "simple question, instead, is whether the defendant received something of value to which he was not entitled and which he must restore").

15

Appellate Case: 25-3068    Page: 19    Date Filed: 02/06/2026 Entry ID: 5605542

Arkansas law does not require the plaintiff to show that he conferred a benefit directly on the defendant.

Flowers alleged facts in his second amended complaint establishing that Caremark received a benefit paid on Flowers's behalf. In that complaint, Flowers alleged that through its "unlawful conduct, Caremark deprives Plaintiff, and other Arkansas plan participants, of the right to receive pharmacy healthcare services from their community retail pharmacies under the coverage of the plans. ***Caremark, and its affiliates, profit from this unlawful conduct***." App. 55, ¶ 1; R. Doc. 57 at 2, ¶1 (emphasis added). Later, Flowers alleged that "Caremark derives unjust financial benefits in the form of payments to administer the drug benefit plans and profit from dispensing the resulting mail-order CVS prescriptions." App. 57, ¶ 13; R. Doc. 57 at 4, ¶ 13. Further, "Caremark is enriched through compensation for administering drug benefit plans in Arkansas." App. 62, ¶ 33; R. Doc. 57 at 9, ¶ 33. That compensation includes payments made to Caremark for the Holcim benefit plan in which "Flowers is a plan participant."[5] App. 56, ¶ 9;

---

[5] Caremark's argument that such payments have nothing to do with Flowers ignores that "employee benefits are an important part of the employee's total compensation package." *Doe v. Blue Cross & Blue*

Appellate Case: 25-3068    Page: 20    Date Filed: 02/06/2026 Entry ID: 5605542

Doc. 57 at 3, ¶ 9.  Those allegations permit at least an inference that Caremark received a benefit on Flowers's behalf.  *See Bresnahan v. City of St. Peters*, 58 F.4th 381, 384 (8th Cir. 2023) (review of motion to dismiss requires drawing all reasonable inferences in favor of the nonmoving party).

Flowers has thus alleged that Caremark received a benefit for its unlawful administration of the Holcim benefit plan that Caremark should not be permitted to retain.  That allegation suffices to state a claim under the broad conception of unjust enrichment recognized under Arkansas law.  The Court should reject this alternative basis for affirmance, too.

## CONCLUSION

Caremark has not rebutted Flowers's argument that the district court erred in dismissing his complaint based on ERISA preemption, and Caremark's alternative bases for affirmance have no merit.  This Court should reverse the dismissal and remand this matter so that Flowers may pursue his claim on its merits.

---

*Shield United of Wisconsin*, 112 F.3d 869, 874 (7th Cir. 1997).  For that reason, payments made to Caremark to provide benefits to Flowers are payments made on his behalf and for his benefit.

17

Appellate Case: 25-3068    Page: 21    Date Filed: 02/06/2026 Entry ID: 5605542

Respectfully submitted:

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
gmarts@wlj.com


By /s/ Gary D. Marts, Jr.
    Gary D. Marts, Jr. (2004116)
    Rodney P. Moore (96134)
    Jessica Pruitt Koehler (2015226)

    and

Scott Poynter
Clay Ellis
POYNTER LAW GROUP, PLLC
4924 Kavanaugh Blvd.
Little Rock, AR 72207
501-812-3943
scott@poynterlawgroup.com
clay@poynterlawgroup.com

*Attorneys for Appellant Kevin Flowers*

18

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit requirements of Fed. R. App. P. 32(a)(7)(B) because, exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 3,452 words.  This certificate was prepared in reliance on the word count of the word processing system (Microsoft Word 2019) used to prepare this brief.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

3.      The undersigned further certifies that the electronic version of this brief has been scanned for viruses and is virus-free.


/s/ Gary D. Marts, Jr.
Gary D. Marts, Jr.


19

Appellate Case: 25-3068     Page: 23     Date Filed: 02/06/2026 Entry ID: 5605542

## CERTIFICATE OF SERVICE

On February 6, 2026, I filed this brief using the Court's CM/ECF

filing system, which will serve a copy on all counsel of record.


/s/ Gary D. Marts, Jr.
Gary D. Marts, Jr.

20

Appellate Case: 25-3068    Page: 24    Date Filed: 02/06/2026 Entry ID: 5605542